*281 J. JONES, J.,
specially concurring.
I concur with the Court’s opinion vacating Bennett’s conviction. As the opinion demonstrates, this is a case that should have been resolved in the civil arena, rather than in a criminal prosecution. Although I do not disagree with the Court’s employment of the Uniform Commercial Code to resolve the question of possessory rights, it does appear that there is another avenue that would produce the same result.
The Legislature has enacted specific provisions relating to the registration, titling, transfer, and securitizing of motor vehicles. Trailers or towed recreational vehicles intended to be operated on the State’s highways are required to be registered. I.C. §§ 49-401A(l) and -422(1). The travel trailer in question here was therefore required to be registered. Under Idaho Code section 49-501, vehicles that are required to be registered pursuant to Chapter 4, Title 49, Idaho Code (with certain exemptions not pertinent here), must be titled. Thus, the trailer at issue here was required to be titled. Idaho Code section 49-502 provides that titled vehicles shall not be sold or otherwise disposed of without delivery to the purchaser of a certificate of title. Idaho Code section 49-518(6) makes it a felony offense for a person to purport to sell or transfer a vehicle without delivering a certificate of title to the purchaser. The Legislature has provided for the perfection of a security interest in registered vehicles when they are sold. The security interest is perfected by compliance with Idaho Code sections 49-504 and -510. A security interest in a vehicle may not be perfected without complying with those sections. The seller’s lien is emblazoned on the certificate of title to, among other things, protect the secured interest of the seller.
Here, LePave failed to comply with the above requirements, in that he did not furnish Bennett a certificate of title as required by statute, and he did not perfect a security interest in the trailer, as he could well have done had he transferred title. He turned over possession of the trailer to Bennett without any written documentation as to the details of the agreement between the parties. There was subsequent dispute as to the purchase price of the trailer, the terms of payment, the number and amount of payments that were made, what (if any) conditions constituted a default, and what remedies Le-Fave had in the event of default.
This case shares a commonality with Johnson v. Bennion, 70 Idaho 33, 211 P.2d 148 (1949). There, Johnson entered into an option contract under which Bennion obtained possession of two oil trucks and trailers for a down payment of $6,000, the right to the continued use of the vehicles upon making specified periodic payments, and the right to obtain certificates of title upon payment of the total purchase price of $32,400. At the same time, the parties entered into an operations contract setting out terms and conditions for Bennion’s use of the equipment. Johnson subsequently repossessed the equipment without process, contending Bennion had failed to make timely payments, damaged the equipment, and forfeited the purchase option. Bennion brought suit for damages, asserting wrongful conversion of the vehicles by Johnson. Bennion recovered a monetary judgment for the conversion in district court and Johnson appealed.
On appeal, Johnson argued, similarly to the State’s argument in this case, that Bennion had no possessory rights to the vehicles because Bennion had received no certificate of title to the vehicles. Id. at 36, 211 P.2d at 150. Johnson’s argument was based upon former Idaho Code section 49-404, which provided that “no person acquiring a motor vehicle from the owner can acquire any right, title, claim or interest thereto until he shall have issued to him a certificate of title thereto.” Idaho Code section 49-503, which the State relied upon below, is the successor provision and essentially contains the same language. The conviction here was based on the premise that Bennett had no justifiable claim to ownership or any possessory interest superior to LeFave’s by virtue of said statute.
However, the Bennion court did not consider the predecessor statute to be controlling. According to the Court,
Obviously that Section does not apply to the transaction herein and was initially so recognized by [Johnson], because he deliv *282 ered possession of the vehicles to respondents in order that they might carry out the terms of the operations contract ... By the operations contract [Bennion], as long as they were not in default, whether because they had paid or [Johnson] had waived strict performanee-thus not being entitled to declare a forfeiture without giving notice and allowing respondents an opportunity to purge themselves of fault-had sufficient right to possession under the authorities cited by [Bennion] to bring the [conversion] action.
Id. at 36-37, 211 P.2d at 150. Thus, by virtue of having been delivered possession of the vehicles and because no determination had been made that Bennion was in default under the agreement providing for Bennion’s use of the vehicles, Bennion had the superior right to possession of the vehicles.
The same result is dictated here. In this case, it is clear that LeFave delivered possession of the trailer to Bennett pursuant to an oral agreement of sale. The parties dispute the terms of the agreement, including the purchase price, payment terms, existence of a default, and the like. Despite the fact that Bennett did not receive a certificate of title, he had a right retain possession of the trailer unless and until it was established that he was in default under the agreement. That obviously could not be determined until the terms of the agreement were established. Subjecting Bennett to criminal proceedings, even though he may have been previously involved with the criminal justice system, as evidenced by the persistent violator charge, was clearly inappropriate.